**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| | : | |
| DEPUY SYNTHES SALES, INC., | : | |
| | : | |
| Plaintiff, | : | Civil Action No. 13-04474 |
| | : | |
| v. | : | **OPINION** |
| | : | |
| MARTIN R. GILL, | : | |
| | : | |
| Defendant. | : | |
| | : | |

This is an action brought by Plaintiff DePuy Synthes Sales, Inc. ("DePuy Synthes" or "Plaintiff"), seeking injunctive relief and damages against Defendant Martin R. Gill ("Gill" or "Defendant") relating to Defendant's employment by American Medical Concepts, Inc. ("AMC") in alleged breach of his Employee Secrecy, Intellectual Property, Non-Competition and Non-Solicitation Agreement (the "Agreement"). Concurrently pending in the United States District Court for the Eastern District of Washington is an action brought by Gill, in which Gill asserts various claims for damages and declaratory relief, seeking a declaration that the Agreement is either unenforceable or void. Presently before the Court is Plaintiff's Motion for an Anti-Suit Injunction and Defendant's Cross-Motion to Transfer. [ECF Nos. 6, 8]. The Court decides these matters without oral argument pursuant to Federal Rule of Civil Procedure 78. These pending motions are opposite sides of the same coin, in that both parties are essentially requesting this Court to determine which forum more appropriately should hear this case: this Court or the United States District Court for the Eastern District of Washington. For the reasons set forth below, the Court finds the competing public and private interests weigh in transferring

this action to the Eastern District of Washington, and therefore grants Defendant's Cross-Motion to Transfer.

## I.      Factual and Procedural History

Plaintiff DePuy Synthes is a Massachusetts corporation that develops, markets, and sells products for the treatment of spinal disease, disorders and injuries.  Compl. ¶¶ 1, 5.  It is affiliated with Johnson & Johnson ("J&J"), a New Jersey corporation.  Affidavit of Jane Clough ("Clough Aff.") ¶ 2.  Defendant Gill is a resident of Spokane, Washington.  Compl. ¶ 2.  Gill was a sales representative employed by John Parkard & Associates ("JPA"), a DePuy Synthes[1] sales organization, from March 2001 through April 2012.   Affidavit of Martin R. Gill ("Gill Aff.") ¶ 4.  Gill's sales territory was exclusively within the State of Washington, and his customers included doctors and hospitals throughout Central Washington.  Gill Aff. ¶¶ 4-5.

In or around February or March of 2012, Gill began working as a direct employee of DePuy Synthes after DePuy Synthes decided to transition that territory to a direct sales model. Clough Aff. ¶ 7; Gill Aff. ¶ 6.  On April 3, Johnson & Johnson Services, Inc. ("JJSI"), a New Jersey corporation, issued an offer letter to Gill as a sales representative of DePuy Synthes in the Central Washington Territory.  Clough Aff. ¶ 8.  Personnel of DePuy Synthes, including recruiters, human resource representatives, and regional managers, then held meetings in Washington with each of the sales representatives, including Gill.  Clough Aff. ¶ 10; Gill Aff. ¶ 8.  On April 10, 2012, Gill executed an Employee Secrecy, Intellectual Property, Non-Competition and Non-Solicitation Agreement (the "Agreement"), as a condition of employment, in Washington.  Gill Aff. ¶¶ 7-8.  On April 30, 2012, the Agreement was executed on behalf of DePuy Synthes in Massachusetts.  Clough Aff. ¶ 8.  All of Gill's offer package and related

---

[1] Prior to at least April 2012, DePuy Synthes was known as "DePuy Spine."  Sometime after Gill's employment with what was then DePuy Spine, the company merged with another company, forming DePuy Synthes. *See* Gill Aff. ¶ 12.

employee documents were drafted in New Jersey in accordance with standard J&J employment documents and finalized by employees of Johnson & Johnson Services, Inc. ("JJSI") who live in Indiana and Minnesota. Clough Aff. ¶¶ 10-11.

This Agreement, which is the center of the current dispute, contains non-competition and anti-solicitation clauses. The non-competition agreement provides that, for a period of eighteen months after Gill's last day of employment at DePuy Synthes, he "will not, directly or indirectly, perform work for any COMPETITOR in any position and in any location in which [Gill] could disadvantage any COMPANY or advantage the COMPETITOR by [Gill's] disclosure or use of CONFIDENTIAL INFORMAITON to which [Gill] has access." *See* Compl. Ex. A ¶ 6 (hereinafter the "Agreement"). Under the anti-solicitation clause, Gill consented to not "solicit any business from, sell to, or render any service to any accounts, customers or clients with which [Gill has] had contact during the last twelve (12) months of [Gill's] employment" with regards to any product or service that competes with one that is being sold or developed by DePuy Synthes for a period of eighteen months after Gill's last date of employment. *See* Agreement ¶ 7.

The Agreement also contains a choice-of-law provision and a permissive forum selection clause, which governs disputes arising therefrom. The Agreement specifies that it would be governed and construed under New Jersey law, without regard to conflict of law rules. The Agreement also stated that actions may be brought in New Jersey courts, and that Gill agreed to waive his objections to personal jurisdiction in New Jersey and to New Jersey courts as a proper venue. Specifically, Paragraph 17 states, in relevant part, that any action arising out of the Agreement "may be brought in the courts of the State of New Jersey or, if subject matter jurisdiction exists, in the United States District Court for the District of New Jersey." Agreement ¶ 17.

As an employee of DePuy Synthes, Gill continued to cover accounts located in Washington State. When necessary, he would cover accounts in Northwest Idaho. Gill Aff. ¶ 14; Affidavit of W. Matthew Meyer ("Meyer Aff") ¶ 8. Gill never worked for, nor received employment instructions from, J&J or any other New Jersey company, or a New Jersey representative of DePuy Synthes. Gill Aff. ¶ 13. Gill's employment duties did include, however, addressing billing issues, which required him to contact a J&J affiliate known as Johnson & Johnson Health Care Systems Inc. Gill Aff. ¶ 13; Meyer Aff. ¶ 10. His employment with DePuy Synthes also required him to work with employees of DePuy Synthes in Massachusetts regarding inventory issues and product needs of his customers, as well as to contact employees of DePuy Synthes in other states regarding other issues with his employment, such as expense reports. Meyer Aff. ¶¶ 11-14.

On March 6, 2013, Gill gave his notice that he would be leaving his employment with DePuy Synthes because of problems he was having with his regional sales manager, Matthew Meyer. Gill's resignation was effective on March 23, 2013. Gill Aff. ¶¶ 16-17; Meyer Aff. ¶ 15. On March 25, 2013, Gill received a job offer from American Medical Concepts, Inc. ("AMA"), an Oregon company that was looking to expand its sales of spinal products into the Central Washington territory. This job offer, however, was contingent on there being no remaining restrictions under the Agreement. Gill Aff. ¶ 18. Because of the apparent uncertainty of employment with AMA, Gill continued to discuss employment opportunities with other companies. These efforts proved to be unsuccessful, apparently because of the terms found in the Agreement. Gill Aff. ¶¶ 19-21.

On or about April 4, 2013, Gill requested payment from DePuy Synthes, claiming that he was entitled to his former gross monthly pay under Paragraph 10 of the Agreement, because he

was unable to find comparable work.[2]  Gill Aff. ¶ 22; Declaration of Kathryn K. Conde ("Conde Decl.") Ex. 4.  On May 1, 2013, DePuy Synthes wrote to Gill informing him that he was not entitled to payment because he had refused to establish an entitlement to compensation due to his failure to provide certain specific information and documentation regarding his job search efforts.  *See* Conde Decl. Exs. 5, 9.  DePuy Synthes and Gill then engaged in a series of emails discussing if the Agreement had been breached by DePuy Synthes' failure to pay Gill his gross monthly pay, and if the Agreement was enforceable as a general matter.  Conde Decl. Ex. 10; Conde Decl. Ex. 11; Gill Aff. ¶¶ 23-25.

Thereafter, Gill filed suit against defendants DePuy Spine, DePuy Synthes, and J&J in the Superior Court of the State of Washington, County of Spokane on June 13, 2013.  *See* Conde Decl. Ex. 18.  This case was then removed by the defendants to the United States District Court for the Eastern District of Washington, where it is currently pending.  That case is proceeding through the discovery stages, and is set for trial in October 2014.  *See* Declaration of Alexandria T. John ("John Aff.") ¶¶ 4-8; Gill Aff. Ex. 11.  In this action (the "Washington Action"), Gill asserts claims for breach of contract and breach of the implied covenant of good faith and fair dealing, negligent misrepresentation, a violation of the Revised Code of Washington by DePuy Synthes by reason of its failure to pay certain wages to Gill, and declaratory relief, seeking a declaration that the Agreement is either unenforceable or void.

On June 14, 2013, DePuy Synthes filed suit against Gill in the Superior Court of the State of New Jersey, Middlesex County, Chancery Division.  *See* Gill Aff. Ex. 9.  DePuy Synthes originally sought an injunction that retrained Gill from working for AMC and a declaratory

---

[2] Paragraph 10 of the Agreement states, in relevant part:  "If, after the termination of your employment within the COMPANIES, you are unable to obtain employment consistent with your education and experience in a position in which your Gross Monthly Pay (as defined below, "GMP") is at least equal to your GMP at the time of such termination solely because the restrictions set forth in Paragraphs 6 or 7 of this Agreement, then any such restriction that caused you to be unable to obtain such employment shall bind you only as long as your EMPLOYER, commencing after you provide written notice pursuant to Paragraph 9, makes monthly payment to you. . . ."

judgment that the Agreement is enforceable. On July 18, 2013, DePuy Synthes amended its complaint, seeking a declaration that the Agreement was enforceable and that it prohibited Gill from working with AMC or any other competitor of DePuy Synthes, that it prohibited Gill from soliciting business from clients of DePuy Synthes, that Gill violated the Agreement when he accepted AMC's offer, and that he was not entitled to any money from DePuy Synthes. This case was then removed to this Court by Gill. These complaints involve the same general factual allegations, and raise mirror image causes of action based upon the same general legal allegations stemming from each party's interpretation of the Agreement.

Plaintiff then brought this Motion for an Anti-Suit Injunction, contending that this Court should exercise its equitable power to enjoin the first-filed action in the Eastern District of Washington. Plaintiff argues that it is the "true plaintiff," and that Defendant Gill engaged in bad faith by anticipatorily filing and forum shopping to avoid less favorable New Jersey law. They emphasize that the Agreement, signed by Gill, contained a choice-of-law provision and a forum selection clause, in which Gill consented to New Jersey being the proper forum for any dispute arising under the Agreement. In response, Gill filed a Motion to Transfer under 28 U.S.C. § 1404(a), arguing that the Eastern District of Washington was more convenient for the parties and witnesses and in the interests of justice, or under the "first-filed rule."

## II. <u>Legal Standard</u>

Section 1404(a) provides that a district court may transfer a civil action "for the convenience of parties and witnesses, in the interest of justice" to a district in which the action might have been brought. 28 U.S.C. § 1404(a). Section 1404(a) was designed to prevent "the wastefulness of time, energy and money" and "to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Continental Grain Co. v. Barge FBL-585*, 364

U.S. 19, 26, 27 (1960). When reviewing a motion to transfer, a court should consider "all relevant factors to determine whether on balance the litigation would more conveniently proceed and the interests of justice better served by transfer to a different forum." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

The decision to grant a motion to transfer lies within the sound discretion of the court. *Cadapult Graphic Sys. v. Tektronix, Inc.*, 98 F. Supp.2d 560, 564 (D.N.J. 2000). The plaintiff's choice of forum should not be lightly disturbed, however.[3] The moving party has the burden to establish that the proposed transferee forum is a proper forum and that the balancing of proper interests weighs in favor of transferring the case. *Jumara*, 55 F.3d at 879.

As a threshold matter, a reviewing court must first ascertain whether the action could have been appropriately and properly brought in the proposed transferee district. *See Lawrence v. Xerox Corp.*, 56 F. Supp. 2d 442, 451 (D.N.J. 1999). After the court determines jurisdiction and venue would also be proper in the proposed transferee district, the court must then consider the validity of any forum selection clause. *See Jumara*, 55 F.3d at 879. Within the framework of a § 1404(a) analysis, a contractual forum selection clause "is treated as a manifestation of the parties' preferences as to a convenient forum," and is entitled to "substantial consideration," even though it is not dispositive. *Jumara*, 55 F.3d at 880. *See also Stewart Org. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (explaining that a contract containing a forum selection clause is a "significant factor that factors centrally into the district court's calculus").

Even though the forum selection clause is presumptively valid, the court must consider the competing private and public interests. *See Jumara*, 55 F.3d at 879-80 (explaining that, because the forum selection clause is non-dispositive, it must be considered within the

---

[3] The presumption towards the plaintiff's choice of forum is "not dispositive," and is only one factor to be considered in a transfer analysis. *Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 521 (D.N.J. 1998).

framework of the other factors). The first category of factors to be considered involves those relating to the private convenience of the parties, including (1) "plaintiff's forum preference," (2) "defendant's forum preference," (3) "whether the claim arose elsewhere," (4) "the convenience of the parties as indicated by their relative physical and financial condition," (5) "the convenience of the witnesses – but only to the extent that the witnesses may actually be unavailable for trial in one of the fora," and (6) "the location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum." *Jumara*, 55. F.3d at 880 (internal citations omitted).

The second group of factors to be considered involves those affecting the public interest in a fair and efficient administration of justice. Such public interest considerations include: (1) "the enforceability of the judgment," (2) "practical considerations that could make the trial easy, expeditious, or inexpensive," (3) "the relative administrative difficulty in the two for a resulting from court congestion," (4) "the local interest in deciding local controversies at home," (5) "the public policies of the fora," and (6) "the familiarity of the trial judge with the applicable state law in diversity cases." *Id*. (internal citations omitted).

The transfer analysis is not limited to only these factors; rather, it is a "flexible and individualized analysis which must be made on the unique facts presented in each case." *Lawrence*, 56 F. Supp. 2d at 450. Courts have added to the aforementioned factors such considerations as the interests of justice and the impact that maintaining the related actions in separate fora would have on judicial administration. *Id*. Ultimately, defendants bear the burden of persuasion to prove that "the proposed alternative forum is not only adequate, but also more convenient than the present forum." *Id*. at 451.

### III.   Legal Discussion

#### A.   Personal Jurisdiction and Venue

First, as a threshold matter, this Court must determine whether the transferee district would have personal jurisdiction over the defendants and if venue would be proper in that proposed alternate forum.  Given that there is already a case pending and proceeding through the discovery stages in the Eastern District of Washington, the potential transferee forum, this threshold question is easily answered in the affirmative.  The fact that the defendants in the Washington Action, which include DePuy Synthes, removed the action into the Eastern District of Washington only emphasizes this fact.  *See, e.g.*, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255 n.22 (1981) ("Ordinarily, this requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction."); *Yang v. Odom*, 409 F. Supp. 2d 599, 604 (D.N.J. 2006) Therefore, this Court finds that the District Court for the Eastern District of Washington would have personal jurisdiction over these parties and that venue may be properly laid there.  Thus, this action may have been properly brought in the Eastern District of Washington.

#### B.   Validity of the Forum Selection Clause

DePuy Synthes contends that transfer is not appropriate and that the case should proceed in this Court because of the forum selection clause contained in the Agreement.  Specifically, it argues that the forum selection provision shows that Gill "explicitly consented" to venue in this Court, and therefore it mitigates "strongly against his after-the-fact claims of inconvenience" and should be enforced.  *See* Plaintiff's Combined Brief in Opposition to Transfer and in Support of Anti-Suit Injunction ("Pl.'s Opp. to Cross Mot.") 10.  Gill resists enforcement of the clause, arguing that, because the clause is permissive, it does not reflect the parties' intent and should not be enforced.

Federal courts determine the effect to be given a contractual forum selection clause by federal law. *Jumara*, 55 F.3d at 877. Forum selection clauses are presumptively valid in the Third Circuit, and will be enforced, unless the party objecting to the enforcement "establishes (1) that it is the result of fraud or overreaching; (2) that enforcement would violate strong public policy of the forum; or (3) that enforcement would in the particular circumstances of the case result in a jurisdiction so seriously inconvenient as to be unreasonable." *Coastal Steel Corp. v. Tilghman Wheelabrator, Ltd.*, 709 F.2d 190, 202 (3d Cir. 1983). *See also Union Steel Am. Co. v. M/V Sanko Spruce*, 14 F. Supp. 2d 682, 686 (D.N.J. 1998) ("Forum selection clauses are prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances.").

Here, the permissive language of the forum selection clause at issue is not identified as a ground by which a forum selection clause could be found to be unenforceable. *See Coastal Steel*, 709 F.2d at 202. Accordingly, Gill has failed to sustain his burden of demonstrating that the forum clause is not presumptively valid and thus should not be enforced. As a result, this Court must engage in a § 1404(a) analysis while giving the clause "substantial consideration" in its balancing of factors. *See Cadapult Graphic Sys.*, 98 F. Supp. 2d at 567.

**C.      Private Interest Factors**

In this case, the Court's consideration of the private interest factors weighs in favor of transfer to the Eastern District of Washington, the forum with the strongest connection to the underlying facts of this case.

First, with regard to the first factor, a plaintiff's choice of forum is generally given great weight in a Section 1404(a) analysis. However, when the plaintiff has not chosen her home forum, then the plaintiff's choice of forum deserves less deference. *See Lony v. E.I. Dupont de*

*Nemours & Co.*, 886 F.2d 628, 633 (3d Cir. 1989). *See also Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1989); *Ricoh Co. v. Honeywell, Inc.*, 817 F. Supp. 473, 480 (D.N.J. 1993). Here, Plaintiff DePuy Synthes has selected a foreign forum. Though it chooses to file suit in New Jersey, it is a citizen of Massachusetts. DePuy Synthes argues that, while it is headquartered in Massachusetts, "significant company functions are conducted through personnel and through affiliated J&J entities in New Jersey," including in-house counsel and its administration of employee benefits and compensation. *See* Pl.'s Opp. to Cross Mot. 9. The Court finds this argument unconvincing. The Complaint squarely states that DePuy Synthes is a Massachusetts corporation with its principal place of business in Massachusetts. Compl. ¶ 1. The fact that some of its company functions are conducted through affiliated companies that are New Jersey corporations does not, in and of itself, make DePuy Synthes a New Jersey corporation. *See Ricoh*, 817 F. Supp. at 481; *American Tel. & Tel. Co. v. MCI Communications Corp.*, 736 F. Supp. 1294, 1306 (D.N.J. 1990) (explaining that, even though a corporation "maintains a considerable presence in New Jersey, it is a New York corporation with a principal place of business in that state" and therefore it could not be "entitled to the greatly enhanced deference due to a plaintiff suing in its home state") (hereinafter "*AT&T*").

DePuy Synthes' forum preference is discredited for another reason. "Where the operative facts of a lawsuit occur outside the forum selected by the plaintiff, that choice is entitled to less deference." *AT&T*, 736 F. Supp. at 1306. *See also Yang,* 409 F. Supp. 2d at 606. Here, the Agreement at issue was signed by Gill in Washington, the contractual duties were performed (at least in large part) in Washington, and the conduct giving rise to the alleged harms by both parties mainly centers in Washington. Therefore, the Court will not give the amount of deference due to a place of residence to DePuy Synthes' choice of forum, although it will not

disregard it.  Rather, the Court will accord it the ordinary deference due to a plaintiff's choice of forum.  *See AT&T*, 736 F. Supp. at 1306.

As to the second factor, Gill, a citizen of Washington, would rather litigate in the Eastern District of Washington.  Thus, this factor weighs in favor of transfer.  DePuy Synthes argues that Gill's claims of inconvenience should be given less weight because Gill expressly consented to venue in the District of New Jersey in the forum selection clause, which reflects "a manifestation of the parties' preferences as to a convenient forum."  Pl.'s Opp. to Cross Mot. 10 (quoting *NCR Credit Corp. v. Ye Seekers Horizon, Inc.*, 17 F. Supp. 2d 317, 321 (D. N.J. 1998)).  In this circuit, "[a] valid forum selection agreement may be treated as a waiver by the moving party of its right to assert its own convenience as a factor favoring transfer. . . ." *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 758 n.7 (3d Cir. 1973).  However, "whether or not a forum selection clause amounts to such a waiver is dependent on whether the clause is mandatory or permissive."  *Travelodge Hotels, Inc. v. Mangat Houston Race Track, L.L.C.*, No. 06-3543, 2007 U.S. Dist. LEXIS 53655, *8 (D.N.J. July 25, 2007).  A party's assent to a permissive forum selection clause has been found not to constitute a waiver of a party's right to claim a transferee forum as their preferred, convenient forum.  *See Days Inn Worldwide, Inc. v. RAM Lodging, LLC*, No. 09-2275, 2010 U.S. Dist. LEXIS 37790, *15 (D.N.J. Apr. 14, 2010); *Travelodge Hotels*, 2007 U.S. Dist. LEXIS 53655, at *8; *Ramada Worldwide, Inc. v. Bellmark Sarasota Airport, LLC*, No. 05-2309, 2006 U.S. Dist. LEXIS 96543, *6-7 (D.N.J. June 15, 2006); *see also Travelodge Hotels, Inc. v. Perry Developers, Inc.*, No. 11-1464, 2011 U.S. Dist. LEXIS 134478, *8 (D.N.J. Nov. 22, 2011) (explaining that a permissive forum selection clause does not "conclusively reflect the parties' intent regarding the appropriate forum to litigate").  Therefore, this Court will still consider this factor to weigh in favor of transfer.

The third factor, where the claims arose, also militates in favor of transfer. This factor turns on which forum contains the center of gravity of the dispute, events, and transactions. *See Park Inn Int'l, L.L.C. v. Mody Enters.*, 105 F. Supp. 2d 370, 377-78 (D.N.J. 2000). DePuy Synthes does not dispute that Washington was the situs for part of the parties' dispute. Rather, it argues that the Agreement was drafted in New Jersey; that Gill's employment offer and other employment documents were drafted and administered in New Jersey; that financing decisions affecting Gill were made by personnel in New Jersey; that it received advice regarding Gill's demands for payment under the Agreement from in-house counsel located in New Jersey; and that any payment Gill received would be paid through JJSI in New Jersey. Accordingly, it maintains that this action does have a "substantial connection" to New Jersey and therefore Gill has failed to prove that Washington "is the center of gravity for this case or that the location of the operative events strongly favors transfer." Pl.'s Opp to Cross Mot. 14.

This Court does not agree. While there are some ties to New Jersey within this dispute, the Court finds that these ties are not integral to the claims involved here. The key inquiry is which forum contains the center of gravity of the parties' dispute. When the dispute involves a contract, a court should consider where the contract was negotiated or executed, where the contract was to be performed, and where the alleged breach occurred. *See Allianz Life Ins. Co. of North America v. Estate of Bleich*, No. 08-668, 2008 U.S. Dist. LEXIS 90720, *14-15 (D.N.J. Nov. 7, 2008). With these considerations in mind, this Court finds that several facts integral to the parties' dispute tip the scale in favor of transfer. Such factors include: that the terms of the Agreement were discussed and agreed to by Gill in Washington; that the Agreement was executed by Gill in Washington; that Gill was hired to perform as a sales representative in Washington; that the Agreement, if enforced, would prevent Gill from soliciting clients of

DePuy Synthes or otherwise competing with DePuy Synthes in Washington; that the alleged contractual breach either occurred or will occur in Washington when and if Gill solicits clients of DePuy Synthes or competes with DePuy Synthes; and that the relief sought by DePuy Synthes would prevent Gill from soliciting clients or otherwise competing with DePuy Synthes in Washington. Furthermore, the ties to New Jersey cited by DePuy Synthes stem, in large part, from Gill performing his contractual obligations in Washington. *See Mediterranean Golf, Inc. v. Hirsh*, 783 F. Supp. 835, 849-50 (D.N.J. 1991). In short, this factor weighs strongly in favor of transfer.

Fourth, a consideration of the parties' relative physical and financial conditions also favors transfer to the Eastern District of Washington. Gill is a salesperson who lives in Washington and has limited financial resources. *See* Reply Affidavit of Martin R. Gill ("Gill Reply Aff.") ¶¶ 2-3. Gill has provided supporting certification that he lacks the financial ability to "meaningfully participate" in a case being litigated over 3,000 miles from home, and to do so would be unfair and cause him prejudice. Gill Aff. ¶ 34; Gill Reply Aff. ¶¶ 2-3. Thus, it is more convenient for him, based on his financial condition, to litigate in Washington. On the other hand, DePuy Synthes is a Massachusetts corporation that does not allege that it has inadequate resources to litigate this dispute in Washington. DePuy Synthes and its affiliates have litigated cases all over the nation and claim here that it finds New Jersey to be a convenient forum, even though this Court is located over 200 miles away from its headquarters. Accordingly, this factor weighs in favor or transfer.

With respect to the fifth factor, transfer is appropriate here for the convenience of the witnesses. The convenience of witnesses is a factor to be considered "only to the extent that the witnesses may be unavailable for trial in one of the fora." *Jumara*, 55 F.3d at 879. In this case,

Gill has identified numerous witnesses that could not be produced in this Court under its subpoena power and would not voluntarily travel to New Jersey to testify.  *See* Gill Aff. ¶¶ 35-39; Gill Reply Aff. ¶ 4.  In reply, DePuy Synthes argues that the majority of these witnesses will provide either duplicative or irrelevant testimony, and therefore cannot show that Washington is a more convenient forum.  *See* Pl.'s Opp. to Cross Mot. 14-16.  When considering these arguments, the Court finds that this factor weighs in favor of transfer.

First, even if DePuy Synthes' argument regarding the alleged immateriality of certain witnesses is considered, there is still a plurality of witnesses located in the Washington area from the list of material witnesses it has provided, including those witnesses that would be beyond the subpoena power of this Court.  This Court also finds it noteworthy that DePuy Synthes has failed to identify by name any New Jersey witnesses with information relevant to their claims.  *See Ricoh Company, Ltd. v. Honeywell, Inc.*, 817 F. Supp. 473, 484-85 (D.N.J. 1993) (noting that it was significant that plaintiff had "failed to submit by affidavit the names of any witnesses-even employee witnesses-in New Jersey" ); *Kelly-Brown v. Winfrey*, No. 11-4360, 2011 U.S. Dist. LEXIS 127213, *13 (D.N.J. Nov. 3, 2011).  In a situation like this, where venue in New Jersey would require both parties and witnesses to travel, "it certainly makes sense to conduct a trial…where only one party and witnesses have to travel rather than where both parties have to travel."  *Ricoh*, 817 F. Supp. at 484 (internal citation omitted).

This Court, however, disagrees with DePuy Synthes' contention that the majority of the witnesses identified by Gill are immaterial and therefore should not be considered.  When considering the  convenience of the witnesses, a court must "scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of the evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action

and to any potential defenses to the action." *Kelly-Brown*, 2011 U.S. Dist. LEXIS 127213 at *13

(quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 528 (1988)).  While this dispute does

involve contract interpretation, Gill has also raised certain equitable arguments regarding the

enforceability of the contract.  These arguments require substantiation that goes beyond what

Gill can testify to, despite DePuy Synthes' contentions otherwise.  Rather, the pieces of evidence

cited to by Gill are at the least relevant, if not critical, to his potential defenses or claims in this

action and could effectively deprive him of his day in court.  To claim at such an early stage of

this proceeding that these witnesses are immaterial is premature.  Furthermore, it is only Gill that

has supplied the names of any witnesses that would be unavailable if the matter was to proceed

in one of the fora.  DePuy Synthes has not claimed that any of its potential witnesses would be

otherwise unable to travel to Washington, if necessary.  *See Jumara*, 55 F.3d at 879; *Travelodge

Hotels*, 2011 U.S. Dist. LEXIS 134478, at *18-19 22, 2011).  Therefore, this Court finds that the

convenience of witnesses weighs in the favor of transfer.

     Sixth, the private factor regarding the location of the relevant documents and records is

neutral, as neither side has argued or proferred evidence that the transportation of documents to

either forum would be unduly burdensome or expensive as to prevent their production.

### C.    Public Interest Factors

     When weighing the public interest factors aspect of a § 1404(a) analysis, the Third

Circuit has stated that a district court "must consider the locus of the alleged culpable conduct,

often a disputed issue, and the connection of the conduct to a plaintiff's chosen forum."  *Lacey v.

Cessna Aircraft Co.*, 862 F.2d 38, 48 (3d Cir. 1988) (internal quotation omitted) (reversed on

different grounds).  Here, after weighing the relevant public interest factors and taking into

consideration "the locus of the alleged culpable conduct," this Court finds that the public interest

factors also weigh in favor of transferring the case to the Eastern District of Washington, the forum that has the greater interest in this litigation.

First, Gill asserts that practical considerations, such as efficiency, warrant litigating this case in Washington. This Court agrees. The presence of the Washington Action, involving claims that are mirror images to this action, favors transferring this matter. *See American Cyanamid Co. v. Eli Lilly & Co.*, 903 F. Supp. 781, 787 (D.N.J. 1995). This is particularly relevant as the case is currently going through discovery and has a trial date. Likewise, the fact that the District of New Jersey has a considerably more congested docket than the Eastern District of Washington also favors transfer, as it is likely that a more expeditious resolution of the matter will occur there. *See* Gill Aff. Exs. 12, 13. It should be noted, however, that the "relative congestion of the respective courts' dockets is not a factor of great importance in this type of motion." *Clark v. Burger King Corp.*, 255 F. Supp. 2d 334, 339 (D.N.J. 2003).

In regard to the fourth factor, this Court finds that both forums have an interest in deciding this case. As Gill contends, Washington has an interest in this matter because it involves the impact of a contract on one of its citizen's ability to find employment within its borders. He emphasizes that the State of New Jersey has little interest in the outcome of the dispute because it involves no New Jersey parties and no events or transactions that occurred in New Jersey. On the other hand, DePuy Synthes argues that New Jersey has a strong local interest in protecting forum corporations generally from breach of contract. It further argues that New Jersey has a strong interest as to the interpretation of this Agreement in particular, because it applies to other New Jersey entities. However, as pointed out by Gill, DePuy Synthes is not a forum corporation here, but rather is a Massachusetts company. As this Court has already determined that Washington is the center of gravity of the parties' dispute, this Court finds, on

balance, that Washington has a stronger local interest in the outcome of this litigation. *See Ricoh*, 817 F. Supp. at 486; *Mediterranean Golf*, 783 F. Supp. at 849 (explaining that courts have a "local interest in having localized controversies decided at home") (quoting *Lony v. E. I. Du Pont de Nemours & Co.*, 886 F.2d 628, 640 (3d Cir. 1989)). Therefore, this factor slightly weighs in favor of transfer.

With respect to the final factor, the Agreement provides that disputes arising thereunder are to be governed by the laws of the state of New Jersey. Thus, the reviewing court will apply New Jersey law to the matter at hand. As such, this factor weighs against transfer. Yet, this Court notes that "federal district courts are regularly called upon to interpret the laws of jurisdictions outside of the states in which they sit." *Yocham v. Novartis Pharms. Corp.*, 565 F. Supp. 2d 554, 560 (D.N.J. 2008); *Travelodge Hotels*, 2011 U.S. Dist. LEXIS 134478, at *22-23.

### D. Interests of Justice and First-Filed Rule

Finally, when determining the advisability of transfer, a court should also consider if the transfer would promote the interests of justice. *See Ricoh*, 817 F. Supp. at 487. Here, as discussed, there is a related litigation pending in Washington, which was filed first by Gill. When two cases are pending concurrently that involve the same parties and subject matter, "the first-filed suit should have priority absent a showing that the balance of inconvenience favors transfer or unless there are special circumstances which justify giving priority to the second suit." *Id.* (citing *AT&T*, 736 F. Supp. at 1308; *Todd Shipyards Corp. v. Cunard Line, Ltd.*, 708 F. Supp. 1440, 1447 (D.N.J. 1989); *Pall Corp. v. Bentley Laboratories, Inc.*, 523 F. Supp. 450, 453 (D. Del. 1981)). Courts must be presented with "exceptional circumstances" in order to depart from the first-filed rule. *See EEOC v. Univ. of Pennsylvania*, 850 F.2d 969, 979 (3d Cir. 1988). Keeping in mind that a court must consider a decision to depart from the first-filed rule "with

regard to what is right and equitable under the circumstances and the law," *EEOC*, 850 F.2d at 977, this Court finds that no such exceptional circumstances have been proven by DePuy Synthes to overcome the private and public factors that justify transferring this matter to the Eastern District of Washington, where the first-files suit is pending.

First, DePuy Synthes argues that it is the "natural plaintiff" in the suit and therefore should not be deprived of its forum preference. The Court notes, as an initial matter, that DePuy Synthes receives less deference with regards to its forum preference, as its forum choice is not its home forum nor have the operative facts occurred in its selected forum. *See AT&T*, 736 F. Supp. at 1306. Next, even if DePuy Synthes was to be considered as the "natural plaintiff" in this suit, this Court has already found that Washington is the proper forum for this matter. Washington "has a greater nexus to the parties and the dispute" and should determine the outcome of this matter. *Honeywell Int'l, Inc. v. Int'l Union*, Civil No. 11-04250, 2011 U.S. Dist. LEXIS 144767, *5-8 (D.N.J. Dec. 16, 2011).

Next, the Court finds that there is insufficient evidence that Gill's lawsuit in the Eastern District of Washington was an anticipatory filing. DePuy Synthes argues that Gill filed his lawsuit in anticipation of DePuy Synthes' own "imminent lawsuit." A review of the communications between the parties, however, fails to show to this Court that Gill's filing was intentionally done to preempt the imminent filing of a lawsuit by DePuy Synthes. These communications contain numerous vague threats concerning possible litigation, but only one statement that could appropriately be classified as demonstrating an intent to file a lawsuit—and that statement came from Gill's counsel. Specifically, counsel for Gill wrote to DePuy Synthes on May 9, 2013 and informed it that Gill intended to accept an offer with AMC effective immediately and that Gill "if necessary will initiate litigation against DePuy Spine in the event

that there is any attempt to tortiously interfere with his right to engage in such gainful employment."   Gill. Aff. Ex. 5; Conde Decl. Ex. 10.  DePuy Synthes claims that "the only way that DePuy Synthes would interfere with such employment is through its own lawsuit," and that "[i]t strains reason to believe that Gill's counsel sent this letter without any apprehension of DePuy Synthes' imminent litigation."  Pl.'s Opp. to Cross Mot. 26.  The Court, however, disagrees with this contention, in part because the filing of a lawsuit by DePuy Synthes would not constitute tortious interference with one's rights (unless it was the filing of a frivolous lawsuit, a claim neither party makes), but also because there are numerous ways in which an individual could tortiously interfere with a person's employment other than through initiating litigation; as just one example, an individual could spread misinformation about that person to his or her prospective employer.

Furthermore, none of the statements made to Gill or his counsel could be interpreted as imparting the type of imminent threat of litigation that case law has required.  While counsel for DePuy Synthes did tell Gill's counsel that it considered him to be in breach of the Agreement and that it would be reserving its rights under the Agreement if he began working for AMC, the Court finds that this is not enough to be considered threats of "imminent litigation."  *Compare EEOC*, 850 F.2d at 977-78 (affirming decision to not follow the first-filed rule where, *inter alia*, the EEOC had "threatened to institute a subpoena enforcement proceeding within twenty days"); *Jermax, Inc. v. AK Steel Corp.*, No. 09-4438, 2010 U.S. Dist. LEXIS 63372, *26-27 (D.N.J. June 24, 2010) (finding that the first-filed rule should not be followed where the second-filing party demanded payment of the debt by a certain date or else the party would "pursue collection of this amount through any and all means available"); *Auto. Serv. Ass'n of N.J., Inc. v. Rockland Exposition, Inc.*, No. 08-3186, 2008 U.S. Dist. LEXIS 104212, *11(D.N.J. Dec. 12, 2008)

(choosing not to apply the first-filed rule when the second-filed party had informed the first-filed party of their intention to file suit, including the date on which they intended to file). In an attempt to show that Gill was aware of the fact that DePuy Synthes intended to file suit, DePuy Synthes points to the statements that its counsel made to AMC. *See* Conde Decl. Ex. 15 ("If we are headed to litigation, please also advise whether AMC will agree to restrict Mr. Gill from his DePuy Synthes accounts…or whether we will need to seek injunctive relief"); Conde Decl. ¶ 20 ("[I]n the absence of discussing restrictions [of the scope of Gill's employment] there were no way to resolve the dispute and that the matter appeared to be headed towards litigation."). Not only were these statements not made to Gill and/or his counsel – and therefore cannot fairly be used to establish that Gill himself knew of any intentions of DePuy Synthes to file suit – but the statements still fail to convey any imminent intention of DePuy Synthes to file suit. Further, even if Gill did allege that he filed his lawsuit in response to certain allegations by DePuy Synthes, this does not, in itself, prove bad faith. *See, e.g.*, *See Violet Pot, LLC v. Lowe's Companies, Inc.*, Civil No. 06-4138, 2007 U.S. Dist. LEXIS 20040, *12-13 (D.N.J. March 20, 2007); *Pall Corp.*, 523 F. Supp. at 453.

Next, DePuy Synthes points to the timing of the filing of the two suits as evidence that Gill anticipatorily filed his lawsuit. This claim fails for the same reasons. DePuy Synthes has failed to show that Gill knew that it was planning on filing suit and then filed its own suit only with the intention of preempting it. *See Catanese v. Unilever*, 774 F. Supp. 2d 684, 688-689 (D.N.J. 2011) ("[T]he policy reasons underlying the first-filed rule are 'just as valid when applied to the situation where one suit precedes the other by a day as they are in a case where a year intervenes between the suits.'") (quoting *Crosley Corp. v. Westinghouse Elec. & Mfg. Co.*, 130 F.2d 474, 475 (3d Cir. 1942)).

This Court also does not find that DePuy Synthes has shown that Gill intentionally misled it in order to delay them from filing suit. Rather, Gill had informed DePuy Synthes of his intentions to work for AMC for months before litigation began. *See* Gill Reply Aff. ¶ 7. While AMC, Gill's employer, may have told counsel for DePuy Synthes a conflicting story, this does not show that Gill himself intentionally misled DePuy Synthes in order to prevent it from commencing litigation. At any point after May 30, the date in which Gill told DePuy Synthes that it intended to work for AMC, DePuy Synthes had the ability to seek either an injunction or declaration or both. The fact that it chose to not do so does not mean that it would be inequitable to apply the first-filed rule. *See Violet Pot*, 2007 U.S. Dist. LEXIS 20040, at *11-13.

Finally, DePuy Synthes argues that Gill engaged in forum shopping by filing in the Eastern District of Washington in order to avoid the application of New Jersey law. DePuy Synthes, however, has provided no evidence that Gill engaged in forum shopping when he filed in Washington, the state where he lives and which has the most connections to the matter at hand. DePuy Synthes does not claim that it cannot obtain a fair trial in Washington or that Washington law, if applied, is less favorable than New Jersey precedent. Specifically, while DePuy Synthes insists that the Agreement has been found enforceable under New Jersey law, it makes no argument that the Agreement would be found to be unenforceable under Washington law or that Washington law would be more favorable to Gill. Rather, DePuy Synthes points to the fact that counsel for Gill had concluded that the Agreement would be unenforceable under Washington law. This Court finds that to be unpersuasive evidence. This is not the case where established precedent exists that the Agreement would be unenforceable in Washington, but enforceable in New Jersey. *See, e.g.*, *Honeywell Int'l, Inc.*, 2011 U.S. Dist. LEXIS 144767, at *6-7(finding convincing evidence of forum shopping when there was proof that the party was

seeking "to avoid unfavorable Sixth Circuit precedent"). Furthermore, a federal judge in the Eastern District of Washington is completely capable of interpreting and applying New Jersey law, if he or she finds that New Jersey law is applicable here. *See Yocham*, 565 F. Supp. 2d at 560 (explaining that federal judges are "regularly called upon to interpret the laws of jurisdictions outside of the state in which they sit").

Under the facts and circumstances of this case, coupled with the enhanced convenience offered by trial in Washington and the failure to show that any "exceptional circumstances" exist in this case to warrant departure from the first-filed rule, the Court finds that the interest of justice are also served by a transfer to the Eastern District of Washington.

This Court concludes that Defendant Gill has demonstrated that he should not be bound by the contractual choice of forum clause and that this matter should be litigated instead in the Eastern District of Washington. "Transfer analysis under Section 1404 is flexible and must be made on the unique facts presented in each case." *Wm. H. McGee & Co. v. United Arab Shipping Co.*, 6 F. Supp. 2d 283, 288 (D.N.J. 1997) (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29-30 (1988)). This case is one in which neither the facts nor the parties have anything but the slightest connections to New Jersey. Rather, the matter has such significant ties to Washington that, on balance, the competing private and public interests weight in favor of transferring the case there, despite the consideration given to the forum selection clause.

**IV.**    **Conclusion**

Accordingly, for the above stated reasons, the Court will grant Defendant Gill's motion to transfer to the United States District Court for the Eastern District of Washington, pursuant to 28 U.S.C. § 1404(a).  An appropriate Order accompanies this Opinion.

/s/ Joel A. Pisano
JOEL A. PISANO, U.S.D.J.